PEARCE, Respondent, v. ROBERTS *et al.*, GARNISHEES, Appellants.

1. A factor may pay over to his principal the proceeds of goods consigned to him for sale, although he may know that his principal had promised to pay certain of his creditors out of such proceeds.

*Appeal from St. Louis Court of Common Pleas.*

Pearce instituted a suit by attachment against James and Henry Burns (the latter of whom died pending the suit), of the firm of Burns & Bro., on two promissory notes. Roberts and Kerr were summoned as garnishees. They answered denying all indebtedness to Burns & Brother. On the trial of this issue the plaintiff introduced the following memorandum: " Warsaw, Benton Co., Mo., January 24, 1854. Received of Messrs. Houseman, Lowry & Co., of St. Louis, Mo., $1,074.09 as an advance in cash on lard in barrels and kegs, hams, shoulders and sides in bulk, the product of 360 hogs, now stored in L. H. Hick's warehouse in Warsaw—the same to be shipped to Messrs. Houseman, Lowry & Co., St. Louis, on opening of navigation, for sale on account of Messrs. Burns & Brother—and to be covered by Messrs. H., L. & Co. by fire and marine insurance, and now subject to their order, control and possession; proceeds, after the above advance and charges, to be subject to the order of Messrs. Burns & Brother. [Signed] Burns & Brother."

Mr. Houseman, of the firm of Houseman, Lowry & Co., left the lard, &c., mentioned in the above instrument in the charge of his agent, Blakey, who had in his possession the

key of the warehouse in which said lard, hams, &c., were stored. At the time of the execution of the above memorandum by Burns & Brother, they expressed the desire to Houseman that he would use the proceeds of the sale of said lard, hams, &c., in payment of the debt due H., L. & Co., and out of the surplus pay off other debts owing by said Burns & Brother. They also requested that he would accept drafts drawn by them for the supposed surplus. He stated to them that they might draw, but he would not accept until a sale had been made and there was a surplus. Such drafts were presented, and acceptance was refused, but Houseman promised that he would pay them if there should be a surplus sufficient therefor. The goods were not shipped to Houseman, Lowry & Co., but were consigned to the garnishees in this case by Martin & Cook. (Martin was a brother-in-law of James and Henry Burns.) Out of the proceeds of the shipment Roberts, Kerr & Co. paid Houseman, Lowry & Co. their demand, and placed the balance to the credit of Martin & Cook. They also, previous to the service of the garnishment process in this case, sold to Martin & Cook a bill of groceries, which was charged to their account, leaving a balance in favor of Martin & Cook of $84.15.

The court, at the instance of the plaintiff, gave the following instruction: "1. If the jury find that the property attached in the hands of the garnishees was at the time of the attachment the property of Burns & Brother, and that garnishees had been notified that Houseman, Lowry & Co. and other creditors of Burns & Brother had claims against it, and that it did not belong to Martin & Cook, then the garnishees can not be permitted to apply the said property to the payment of debts contracted with them by Martin & Cook subsequent to the time of being so notified."

At the request of defendants the court instructed the jury as follows: "1. Unless the jury find that defendants were indebted to Burns & Brother at the time of the garnishment, or had property in their hands at the time belonging to Burns & Brother, then they will find for defendants. 2. If

the jury believe from the evidence that defendants had no knowledge of any other claims against the property than that of Houseman, Lowry & Co. at the time of their sale of the property and their sale of the bill of goods to Martin & Cook, and that the sale of the merchandise was made with the consent of Houseman, Lowry & Co., and that they complied with their agreement with said H., L. & Co., then they will find for defendants, excepting as to the balance in defendants' hands after being paid for goods sold by them to Martin' & Cook."

The court refused the following instruction asked by defendants : " The jury are instructed that the goods became the property of Houseman, Lowry & Co. at the time of making the paper dated January 24, 1854, and the delivery by possession thereof to him; and if they find that he retained said property and that the same was sold by defendants with their consent, then they must find for defendants."

The jury found for the plaintiff, and found that at the date of the garnishment defendants had in their hands $534.78 belonging to Burns & Brother. The court rendered judgment in favor of plaintiff for $328, the amount recovered by plaintiff against James Burns, defendant in the attachment.

*Biddlecome*, for appellants.

*Wickham & Snead*, for respondent.

I. The garnishees, having been notified that the consignment to them by Martin & Cook was fraudulent, could not after such notification defeat the claim of an attaching creditor of the rightful owner by placing the proceeds of sale to the credit of the fraudulent consignor. (Pool v. Adkinson, 3 Dana, 115 ; Story on Agency, § 360 ; 19 Pick. 230 ; Drake on Attachment, § 414 ; Cushing on Trustee Process, § 26–8, 35–40.) After Houseman, Lowry & Co. had received satisfaction of their advances, and had surrendered possession of the property to appellant, they had no further claim to said produce, they having refused to accept the drafts drawn upon them by Burns & Brother against the surplus proceeds of sale of the produce.

RICHARDSON, Judge delivered the opinion of the court.

Though the warehouse receipt executed by Burns & Bro. to Houseman, Lowry & Co. gave to the latter the right to the possession of the property until their advances were refunded, it evidently was only intended as a security, and Burns & Bro., by paying the debt, could have extinguished the lien, or they could have transferred their equity to another person who, on succeeding to their rights, would have held the property, by paying Houseman, Lowry & Co., free from the claims of the creditors at large of Burns & Bro.

If Houseman, Lowry & Co. had received the property under a stipulation to sell it and apply the proceeds to the payment of their debt, and the residue to other named debts, a trust would have attached upon it in their hands, from which they could not have been relieved merely by obtaining satisfaction of their own debt; but the trust would have continued and have followed the property into the hands of every other person who received it with notice. But the receipt on its face conferred no rights and imposed no duties except as between the parties to it, and, from any thing that appears in the record, there was no lien or claim on the property as against Burns & Bro. in favor of any person except Houseman, Lowry & Co., and Burns & Bro. had the power of transferring it, subject only to one claim, to any *bona fide* creditor or purchaser; and their promise to pay other creditors the surplus created no lien upon it.

A factor must know whose property he is selling, and must respect at his peril any valid liens on it; but he has the right to pay the proceeds to the owner, or to his order, although he may know that the owner has promised them to his creditors. So, if the consignment had been received directly from Burns & Bro. the defendants would have had no reason, before they were garnished, to withhold the proceeds of the sale after paying Houseman, Lowry & Co. for the benefit of the general creditors of Burns & Bro.; and, conceding that the transfer to Martin & Cook was made with a fraudulent purpose, it was good against Burns & Bro., and was sufficient, as

far as they were concerned, to authorize Martin & Cook to direct the disposition of the proceeds of the consignment.

It appears that the property came to the defendants under a consignment from Martin & Cook; that it was sold and the debt paid to Houseman, Lowry & Co., and, though Mr. Houseman says, " I think I told them that there were some drafts to be paid," there is not a word in the record to show that a draft had been drawn in favor of the plaintiff, or that he had a lien on the property of any kind, or that the defendants ever knew he was a creditor.

An ordinary draft in favor of the plaintiff on Houseman, Lowry & Co. would not have operated as an assignment of any interest in the property; (Kimball v. Donald, 20 Mo. 577;) and notice to the defendants that the creditors of Burns & Bro. had been promised payment out of the proceeds of the sale of the property would not have prevented them from paying the proceeds to the owners, their agents or their vendees.

There is no evidence that any of the creditors of Burns & Bro., except Houseman, Lowry & Co., had claims against the property, and the instruction therefore given by the court, at the plaintiff's request, was erroneous in assuming that there was evidence that " other creditors of Burns & Brother had claims against it."

If the property really belonged to Burns & Bro. the defendants are liable for whatever was in their hands at the time they were garnished; but they are not liable for any thing they had paid, or for the amount taken in goods by Martin & Cook, unless they were guilty of fraud, and participated with Martin & Cook and Burns & Bro. in a scheme to cheat the creditors of the latter.

The case was not put on trial on the ground of fraud, neither in the proof nor in the instructions asked or given.

The other judges concurring, the judgment will be reversed and the cause remanded.