FAIRBANKS, MORSE & COMPANY ET AL., APPELLANTS, V.
J. L. WELSHANS & COMPANY ET AL., APPELLEES.

FILED JUNE 9, 1898.   No. 8119.

1. Creditors' Bill: PETITION. The petition set out in the opinion, and
*held* to be an ordinary creditors' bill and as such not to state a
cause of action.

2. ———: ———: PARTIES: ASSETS OF INSOLVENT PARTNERSHIP: SUR-
VIVING PARTNERS. A non-judgment creditor of an insolvent co-
partnership dissolved by the death of one of the partners, the
surviving member and the estate of the deceased partner being
insolvent, cannot maintain an action, in the nature of a credit-
ors' bill, to set aside a fraudulent and void disposition made of
the copartnership assets by the surviving partner, unless the
facts averred in the petition show that the creditor has a lien on
such assets, or that they are held in trust for partnership cred-
itors, or that it is impossible to obtain judgment because the par-
ties liable are out of the jurisdiction of the court, and it appears
that there exists no property within the court's jurisdiction
which can be reached by attachment, garnishment, or other
legal process.

3. Debtor and Creditor: EQUITABLE ASSIGNMENT. An agreement of a
debtor to pay his creditor's claim out of the moneys of a partic-
ular fund, but which gives the creditor no present right in or
control over such fund or any part thereof, does not operate as
an equitable assignment of any part of such fund to the creditor.

4. Partnership: LIEN OF CREDITORS. The creditors of a copartnership,
merely because they are such, are not given a lien by law upon
its assets whether the firm be solvent or insolvent.

5. ———: ASSETS: TRUSTS. The assets of an insolvent copartnership,
dissolved by the death of one of its members, are not held in
trust by the surviving partner of the firm for the payment of
copartnership debts.

6. ———: ———: RIGHTS OF SURVIVING PARTNER. On the dissolution
of a copartnership by the death of one of its members the right
to the possession and disposition of the copartnership assets vests
in the surviving partner.

APPEAL from the district court of Douglas county.
Heard below before AMBROSE, J. *Reversed.*

*Virgil O. Strickler, Byron G. Burbank, Kennedy & Learned,
B. N. Robertson,* and *Isaac W. Hascall,* for appellants.

*Congdon & Parish, O'Neill & Gilbert, James W. Carr, L. I. Abbott, Rich & Sears,* and *A. C. Wakeley, contra.*

RAGAN, C.

Fairbanks, Morse & Co., an Illinois corporation, brought this suit in the district court of Douglas county against J. L. Welshans & Co., a Nebraska copartnership; J. L. Welshans, the surviving member of said copartnership; David C. Patterson, administrator of the estate of J. H. Dwelley, the deceased member of said copartnership; Anna Dwelley, widow of J. H. Dwelley, deceased; Daniel Keniston, Josiah Kent, and David C. Patterson, sureties on certain bonds executed by said copartnership; and the Crane Company, a creditor of said copartnership. The N. O. Nelson Manufacturing Company, also a creditor of said copartnership, intervened in the action and filed an answer in the nature of a cross-petition against the persons made defendants to Fairbanks, Morse & Co.'s action. Numerous other parties, being creditors of said copartnership, were also brought into the action. Fairbanks, Morse & Co. will hereinafter be designated as Morse & Co.; the N. O. Nelson Manufacturing Company as the manufacturing company; Patterson, Keniston, and Kent will hereafter be denominated the sureties.

When the case came on for trial in the district court the sureties and all the creditors of the copartnership of Welshans & Co., except the manufacturing company, objected to the introduction of any evidence on the part of Morse & Co. or the manufacturing company, on the grounds that neither the petition of the former nor the cross-petition of the latter stated facts sufficient to constitute a cause of action against the objectors. These objections were overruled. The court heard the case and rendered a decree therein, which is now before us on appeal.

1. In view of the conclusion reached by us we have thought it best to set out all the material allegations of the petition of Morse & Co. They are as follows:

"(3.) That on the said 29th day of May, 1893, J. L. Welshans and J. H. Dwelley, doing business as J. L. Welshans & Co., as aforesaid, entered into a written contract with Major C. F. Humphrey, quartermaster of the United States army, to furnish all labor and material necessary to do and perform all of the plumbing, steam heating, and gas piping in all of the buildings then being erected by the United States at Fort Crook, Sarpy county, Nebraska. * * *

"(4.) That to secure the faithful performance of all of the covenants, requirements, and conditions of said contract, plans, and specifications the said J. L. Welshans & Co., as principals, and defendants and David C. Patterson and Daniel Keniston, as sureties, did, on the said 29th day of May, 1893, make, execute, and deliver their certain bond to the United States in the sum of $11,708. * * *

"(5.) That on the 2d day of August, 1893, the said J. L. Welshans and J. H. Dwelley, doing business as J. L. Welshans & Co., entered into a contract for $6,355 with Major C. F. Humphrey, quartermaster of the United States army, to furnish certain labor and material in and about the construction of certain other buildings at Fort Crook not included in the contract, marked 'Exhibit A,' and on said date the said J. L. Welshans and J. H. Dwelley, as J. H. Welshans & Co., made, executed, and delivered a bond to the United States to guaranty the faithful performance of said contract, which said bond was for the sum of $2,225, signed by defendants Daniel Keniston and Josiah Kent as sureties; that on September 11, 1893, the said J. L. Welshans and J. H. Dwelley, as J. L. Welshans & Co., entered into a contract for $1,331 with the said C. F. Humphrey, quartermaster of the United States army, as aforesaid, to furnish certain labor and material in and about the construction of a storehouse at the quartermaster's depot at Omaha, Nebraska, and that to secure the faithful performance of said last named contract the said J. L. Welshans * * *

made, executed, and delivered to the United States a certain bond for $446, which said bond was signed by defendants David C. Patterson and Josiah Kent as sureties.

"(6.) That after the execution of said contract between the United States and Welshans and Dwelley, as J. L. Welshans & Co., as aforesaid, on the 29th day of May, 1893, and hereto attached as Exhibit A, the said J. L. Welshans & Co. entered into a contract with the plaintiff whereby the plaintiff agreed to furnish to the said J. L. Welshans & Co., to and for the construction of the buildings at Fort Crook as aforesaid, mentioned in Exhibit A, four boilers and necessary trimmings, valves, water columns, gauges, cocks, grates, and all other appurtenances thereto, according to the specifications furnished, for the agreed price of $2,735; that the said specifications, which were made a part of the contract between J. L. Welshans & Co. and the government, provided that the boilers should be paid for as soon as they were set in place and accepted, and that the said J. L. Welshans & Co. then and there agreed to and with the plaintiff that the said plaintiff should be paid for the said boilers and other materials so furnished, as aforesaid, out of and have a lien upon the proceeds of said contract, and that as soon as said boilers had been set in place and accepted by the United States the plaintiff should receive the money accruing under said contract therefor; that the plaintiff furnished said boilers and other materials and delivered the same at Fort Crook, Nebraska, on or about the 1st of July, 1894, but that on or about the 10th day of September, 1894, the said boilers and other materials so furnished by plaintiff were rejected by the United States, as plaintiff was notified, upon the ground that said boilers and appurtenances thereto did not come up to the requirements of said specifications.

"(7.) That on the 15th day of September, 1894, the said J. L. Welshans & Co. became insolvent and notified

Major C. F. Humphrey, quartermaster as aforesaid, that they would be unable to complete their contracts with the United States; that on said 15th day of September the said J. L. Welshans & Co. attempted to assign, and did assign, in so far as they were able to do, to their said bondsmen, David C. Patterson, Daniel Keniston, and Josiah Kent, defendants herein, all of their rights, titles, and interests in and to all of their contracts with the United States, together with all moneys due or to become due upon said contracts, and gave to their said bondsmen full right and authority to carry on and complete said contracts in the place and stead of the said J. L. Welshans & Co. as fully and completely as the said J. L. Welshans & Co. could or would have done; that by the terms of said attempted assignment the said David C. Patterson, Daniel Keniston, and Josiah Kent were authorized and empowered to collect and receive from the United States all moneys then due the said J. L. Welshans & Co., together with all sums that were to become due under their said contracts, and were empowered, authorized, and directed to proceed with the work under said contracts and to complete the same in the place and stead of said J. L. Welshans & Co.; that the said defendants David C. Patterson, Daniel Keniston, and Josiah Kent accepted, affirmed, and ratified said attempted assignment from said J. L. Welshans & Co. to themselves, together with all the conditions thereof, and immediately on the said 15th day of September, 1894, took charge of the work under said contracts for and in the place of the said J. L. Welshans & Co., and have ever since said time carried on the work under said contracts, and are now carrying on the work under said contracts, in the place and stead of the said J. L. Welshans & Co.

"(8.) That at the time the said David C. Patterson, Daniel Keniston, and Josiah Kent succeeded to said contracts by the attempted assignment from J. L. Welshans & Co., as aforesaid, the boilers, together with the other materials furnished by the plaintiff as aforesaid, to be

used in the construction of the steam heating plant in and about the contract, hereto attached as Exhibit A., were on the grounds at Fort Crook, but the same had been rejected by the United States and no part of the same had either been received or paid for, and were not at that time inwrought into the building for the reason, as plaintiff was informed, that they did not comply with the specifications; that afterward, and for the purpose of completing the contract, the said defendants David C. Patterson, Daniel Keniston, and Josiah Kent, bondsmen and assignees as aforesaid, required plaintiff to make certain changes in and about said boilers and other materials, for the purpose of making the same conform to the specifications; that the boiler fronts furnished by plaintiff were adjudged not to be of the thickness required by said specifications, and that the said David C. Patterson, Daniel Keniston, and Josiah Kent caused other and different boiler fronts to be provided, and those furnished by plaintiff were returned to plaintiff and the difference between the price of those furnished by plaintiff and those required by the said bondsmen to be provided amounting to nearly $200, which said sum was by the said David C. Patterson, Daniel Keniston, and Josiah Kent charged back to the plaintiff upon their contract with the said J. L. Welshans & Co.; that the said David C. Patterson, Daniel Keniston, and Josiah Kent rejected and returned to plaintiff certain water columns and other minor materials which the plaintiff had delivered at Fort Crook under and by virtue of its said contract with J. L. Welshans & Co., alleging that the same did not comply with the specification of said contract, and in each instance the said David C. Patterson, Daniel Keniston, and Josiah Kent charged back upon their books the price of each of said articles to plaintiff and deducted the same from the amount of plaintiff's contract; that the total amount of said deduction so made by the said David C. Patterson, Daniel Keniston, and Josiah Kent, because of such defects as alleged,

including the difference between the cost of the boiler fronts, amounted to the sum of $220.78, which said sum has been by them upon their own books deducted from the amount of plaintiff's original contract; that after the changes had been made in the boilers and appurtenances thereto, as aforesaid, and the same had been made to comply with the requirements of the United States, the same were duly accepted by the United States, and the said David C. Patterson, Daniel Keniston, and Josiah Kent collected and received from the United States full payment therefor.

"(9.) That at the time of the attempted assignment of said contracts by J. L. Welshans & Co. to David C. Patterson, Daniel Keniston, and Josiah Kent, as aforesaid, a large sum of money was due and owing from the government to J. L. Welshans & Co. for work and material already furnished and performed under said contract, which money has since been collected and received by the said David C. Patterson, Daniel Keniston, and Josiah Kent, and by them used to pay and discharge their own personal obligations; that the United States refused to recognize the attempted assignment of said contracts by the said J. L. Welshans & Co. to the said David C. Patterson, Daniel Keniston, and Josiah Kent, bondsmen, as aforesaid, except in so far as the said assignees were permitted to complete the work under said contract in the place and stead of J. L. Welshans & Co.; that the United States refused to pay any moneys arising upon said contract directly to the said David C. Patterson, Daniel Keniston, and Josiah Kent, but after the attempted assignment of said contracts by J. L. Welshans & Co. to David C. Patterson, Daniel Keniston, and Josiah Kent the United States has requested that all payments of moneys under said contract that have been so paid by the government should be paid in the presence of one or more of the bondsmen to J. L. Welshans, who immediately handed the same over to the bondsmen, so that since the 15th day of September, 1894, although the

United States has technically paid all moneys arising under said contracts to J. L. Welshans & Co., yet in fact and in reality the same has been paid to David C. Patterson, Daniel Keniston, and Josiah Kent, and the said David C. Patterson, Daniel Keniston, and Josiah Kent have received all moneys paid by the government upon said contracts since the 15th day of September, 1894, which said payments amount in the aggregate to many thousand dollars (as plaintiff is informed and believes to be more than $10,000), all of which has been used by the said David C. Patterson, Daniel Keniston, and Josiah Kent in and about their own personal affairs and to pay their own personal obligations; that of the money so collected and received as aforesaid by the said David C. Patterson, Daniel Keniston, and Josiah Kent more than $3,000 was so paid to and received by them from the United States for and on account of steam heating connected with the contract of May 29, 1893, a copy of which is hereto attached, marked 'Exhibit A.'

"(10.) That there is now due and owing from the United States under said contracts a large sum of money, amounting in the aggregate to, as plaintiff is informed and believes, about the sum of $17,000, representing the balance due upon said contracts; that all of said sum is due upon the contract of May 29, 1893, a copy of which is hereto attached, marked 'Exhibit A,' and that of said sum about $13,000 is due for and about the completion of the steam heating plant in which plaintiff's boilers and other materials were used; that notwithstanding the fact that the United States has refused to recognize said attempted assignment to J. L. Welshans & Co. to the said bondsmen, the said J. L. Welshans has, ever since the 15th day of September, 1894, paid over immediately upon the receipt thereof to the said bondsmen all moneys so received by him as aforesaid from the government, and that when he receives the balance, amounting in the aggregate as aforesaid to about $17,000, from the United States he will, unless he is restrained, pay

28

the same over to the said David C. Patterson, Daniel Keniston, and Josiah Kent, and will not pay plaintiff for said materials, as under said contract he should have done, out of the moneys already received, as well as out of those he is about to receive, and that if the said moneys are so paid into the hands of the said David C. Patterson, Daniel Keniston, and Josiah Kent, they will use the same in and about their own personal obligations and will not pay plaintiff the amount due the plaintiff for the materials so furnished as aforesaid.

"(11.) That since the 15th day of September, 1894, the said David C. Patterson, Daniel Keniston, and Josiah Kent have wastefully and extravagantly expended a much greater sum of money in and about the completion of said contracts so attempted to be assigned to them by the said J. L. Welshans & Co. than was necessary to be expended, and have wrongfully diverted the money arising under said contracts and so received by them as aforesaid, to the injury and damage of the plaintiff.

"(12.) That because of the fact that the government is a party to the contract, and is the party in whose hands the money is now held, the plaintiff is without any legal remedy either to prevent the wrongful diversion of said funds or to compel the application of the same to the payment of the plaintiff's claim, as plaintiff is entitled to have done.

"(13.) That on the 4th day of April, 1894, the said J. H. Dwelley died and the defendant David C. Patterson was on the 2d day of June, 1894, duly appointed administrator of the estate of the said J. H. Dwelley, deceased, and that the said David C. Patterson is now performing the duties of such administrator, and that the said J. H. Dwelley was at the time of his death insolvent.

"(14.) That because of the contract made between J. L. Welshans & Co. and the plaintiff, that the plaintiff should be paid for the boilers and other materials so furnished, as aforesaid, by the plaintiff in and about the construction of the buildings mentioned in contract

marked Exhibit A, hereto attached, and the provisions in the specifications of said contract providing that said boilers should be paid for as soon as the same were set in place and accepted by the United States, and because of the insolvency of J. L. Welshans & Co. as aforesaid, and the assignment to the said David C. Patterson, Daniel Keniston, and Josiah Kent of said contracts, together with all of the rights, titles, and interest of the said J. L. Welshans & Co. therein, including all sums of money then due and owing thereunder, and the subsequent dealings of the said parties, the said J. L. Welshans & Co., David C. Patterson, Daniel Keniston, and Josiah Kent became and are trustees of all funds which have come into their hands from the United States. Under said contracts all such funds have so come into the hands of each and all of them, or will come into the hands of each and all of them, in trust for this plaintiff, to the extent of plaintiff's claim for materials so furnished as aforesaid and by the said parties used and inwrought into the said buildings, amounting, as aforesaid, to the sum of $2,514.12, which sum is now due and owing to the plaintiff, together with interest thereon at seven per cent per annum from the time that the said materials were accepted by the government.

"(15.) * * * That long after the decease of the said J. H. Dwelley, partner of the said J. L. Welshans and a member of the partnership of J. L. Welshans & Co., the said J. L. Welshans pretended to give an order upon Major Humphrey, quartermaster aforesaid, in favor of Crane Company, a corporation having a place of business in Omaha, Nebraska; said order being for the sum of $7,400 of the money due or to become due from the said government under said contract of May 29, 1893; * * * that after the decease of the said J. H. Dwelley the said J. L. Welshans attempted to, and did, make to one Mrs. Anna Dwelley an order upon the said Major Humphrey, quartermaster, for the sum of $1,500, which said order was made by the said J. L. Welshans, attempt-

ing and pretending to act as J. L. Welshans & Co.; that the said J. L. Welshans acted and pretended to act in making said order in favor of the said Crane Company for and on behalf of the partnership of J. L. Welshans & Co.; * * * that said partnership of said J. L. Welshans & Co. was absolutely and finally dissolved by the death of the said J. H. Dwelley long prior to the making of either of the above mentioned pretended orders upon said quartermaster, and that the said J. L. Welshans, at the time said orders were made, if made, had no authority in law or in equity to make and deliver, or to cause to be made and delivered, either of the above mentioned orders; neither had the said bondsmen of the said J. L. Welshans & Co. any authority in law or in equity to make any order in favor of either the said Crane Company or the said Mrs. Anna Dwelley, and that any attempt to do so was a fraud upon the creditors of J. L. Welshans & Co. and in direct violation of the rights of the plaintiff herein, and were made for the purpose of fraudulently disposing of the assets of the said J. L. Welshans & Co. and placing them beyond the reach of the creditors of the said J. L. Welshans & Co., and were made for the purpose of diverting said money from the payment of the debts of the said J. L. Welshans & Co., and for the purpose of paying the individual liability of the said D. C. Patterson, Daniel Keniston, and Josiah Kent, and was fraudulent, illegal, and null and void, and of no force and effect; * * * that neither of said orders was, at the time of the institution of this suit, or at the time of the order heretofore made herein directing said moneys in the hands of the said quartermaster to be paid to the clerk of this court, accepted, and the said quartermaster in paying said $7,400 to Crane Company and $1,500, with interest thereon, amounting, as plaintiff is informed, to $1,650, to the said Mrs. Anna Dwelley acted fraudulently and illegally and for the fraudulent purpose of aiding and abetting the said bondsmen and J. L. Welshans and the said Crane Company and Mrs. J. H.

Dwelley in diverting the assets of the partnership of J. L. Welshans & Co. from the creditors of said copartnershp and applying the same upon the individual liabilities and indebtedness of the said D. C. Patterson, Daniel Keniston, and Josiah Kent; * * * that on or about the 15th day of September, 1894, the said J. L. Welshans, pretending to act for and on behalf of the said J. L. Welshans & Co., although the said J. H. Dwelley had long since deceased—the said firm of J. L. Welshans & Co. having thereby dissolved—attempted and endeavored to divert the assets of the firm of J. L. Welshans & Co. from the legitimate purpose of being applied to the payment of the debts of said partnership; and the said J. L. Welshans was in such purpose assisted, aided, and abetted by the said defendants D. C. Patterson, Daniel Keniston, and Josiah Kent, bondsmen of the said J. L. Welshans & Co.; that at said time the said D. C. Patterson was the administrator of the estate of the deceased partner, J. H. Dwelley, and had qualified and was acting in such capacity as administrator of said estate; that acting in said capacity he had no authority whatsoever to receive, by any act of the said J. L. Welshans, or by his own act, any benefit or property of or from the estate of the said J. H. Dwelley of which he, the said Patterson, was administrator; that the said Patterson had no right, either in law or in equity, to have or receive anything of benefit of or from the said estate except through the due course of the administration of the estate of the said J. H. Dwelley in and through the county court of Douglas county, Nebraska; that neither the said J. L. Welshans nor the said D. C. Patterson ever had or took any proceedings whatsoever in said estate to have ascertained or determined the interest of the said J. H. Dwelley in or to the partnership of J. L. Welshans & Co.; and, in direct violation of the laws of this state governing the administration of the estates of deceased persons in partnerships, attempted to sell and dispose of said assets without authority from the county court of Douglas

county, Nebraska, or otherwise; that the said estate of the said J. H. Dwelley has been manipulated by the said D. C. Patterson for the sole and only purpose of preferring to himself the entire payment of all liability of the said Dwelley as a member of the partnership of J. L. Welshans & Co., in violation of the law and for the purpose of cheating and defrauding other creditors of the said Dwelley; * * * that the said J. L. Welshans not only made an assignment pretending to act for and on behalf of the said dissolved partnership of the said J. L. Welshans & Co., but attempted to make and deliver to the First National Bank of Omaha, Nebraska, Nelson Manufacturing Company, Omaha Shot & Lead Works, T. Lyle Dickey Company, and others, assignments of all of the property which had since been the property of the dissolved partnership of the said J. L. Welshans & Co., and that each and all of the said assignments were absolutely null and void and without force and effect; that the sale of said assets and the making of said pretended assignments had never been authorized by the county court of Douglas county, Nebraska, or by any other court whatsoever, and that such pretended assignments were made by the said J. L. Welshans without authority and for the fraudulent and collusive purpose of cheating and defrauding the plaintiff herein and the creditors of the said firm of J. L. Welshans & Co., and for the purpose of giving to the said bondsmen herein and the said First National Bank, Omaha Shot & Lead Works, T. Lyle Dickey, Nelson Manufacturing Company, and others, an unlawful, illegal, and inequitable preference over this plaintiff; * * * that the said J. L. Welshans, pretending to act for and on behalf of the said J. L. Welshans & Co., then long since dissolved by the death of the said J. H. Dwelley, attempted and pretended to give chattel mortgages upon the property which had once been the assets of the said firm of J. L. Welshans & Co., to each and all of the bondsmen and parties hereinbefore mentioned, and falsely,

fraudulently, and collusively attempted thereby to create
a preference in favor of the parties above mentioned,
over and above the plaintiff herein, which said attempted
preference was unlawful, illegal, and inequitable; * * *
that the execution and delivery of the said assignments,
and each of them, and of said chattel mortgages, and
each of them, was in violation of the laws of this state,
and therefore null and void and not binding upon this
plaintiff; * * * that the said Daniel Keniston and
Josiah Kent, as well as the said D. C. Patterson, as
sureties upon the said bond of the said J. L. Welshans
& Co. to the government, had no authority or right to
have and receive from the said J. L. Welshans any of
the assets or property of the said dissolved firm of J. L.
Welshans & Co., and they could not, by any such act of
the said J. L. Welshans, pretending to act for said dis-
solved partnership, nor by any act of the said D. C.
Patterson, who was then in fact the administrator of the
estate of the said J. H. Dwelley, deceased, have or re-
ceive any preference in any manner whatsoever over and
above the other creditors of the said J. L. Welshans &
Co. or of the said J. H. Dwelley, deceased member of
the said partnership; * * * that neither the said
Patterson, Keniston, and Kent could have or receive any
preference over the other creditors of the said dissolved
firm of J. L. Welshans & Co. and over the creditors of
the estate of the said J. H. Dwelley, deceased, by reason
of any assignment given to the said D. C. Patterson,
Josiah Kent, and Daniel Keniston to secure their lia-
bilities as guarantors to Crane Company, for materials
furnished by Crane Company to the said J. L. Welshans
& Co., J. L. Welshans, or to said bondsmen; and that
the said Crane Company and the said Mrs. Dwelley
could not thereby obtain any preference over the said
creditors of the said dissolved partnership of said J. L.
Welshans & Co., or the creditors of the estate of the said
deceased Dwelley, to have and receive of and from the
said quartermaster, as hereinbefore stated, the sum of

$7,400, and the $1,500 with interest, received respectively by the said Crane Company and the said Mrs. Dwelley; that the said estate of the said Dwelley is wholly and absolutely insolvent, and the said J. L. Welshans is personally, wholly, and absolutely insolvent, and the said dissolved partnership of J. L. Welshans & Co. is likewise wholly and absolutely insolvent, and the said Dwelley estate and the said Welshans and the said dissolved partnership of the said J. L. Welshans & Co. each were wholly and absolutely insolvent at the time said assignments and mortgages hereinbefore mentioned were made and at the time when said pretended orders in favor of the said Mrs. Dwelley and Crane Company were attempted to be made by the said J. L. Welshans & Co.; * * * that the said J. L. Welshans, pretending to act for and on behalf of the dissolved partnership of J. L. Welshans & Co., and the said bondsmen, Patterson, Keniston, and Kent, have received and appropriated to their own use and benefit large parts of and portions of the assets of the said dissolved firm of J. L. Welshans & Co., and they have thereby unlawfully, illegally, and fraudulently and collusively obtained to themselves a preference over and above the other creditors, and particularly plaintiff, of the said dissolved firm of J. L. Welshans & Co., J. L. Welshans, and the estate of J. H. Dwelley, deceased; * * * that the said J. L. Welshans, D. C. Patterson, Daniel Keniston, and Josiah Kent have received from the United States government about $10,000 since the decease of said Dwelley out of the contracts with the said government which were partnership property of the firm of J. L. Welshans & Co., and the said Welshans, Patterson, Keniston, and Kent have likewise received out of the chattel property of the said dissolved firm of J. L. Welshans & Co. large sums of money, the exact amount of which is unknown to plaintiff herein, and appropriated said $10,000, or more, and said moneys and personal property, falsely, fraudulently, and collusively, to their own individual

use and benefit, and for the unlawful and illegal purpose of hindering and delaying plaintiff herein and the creditors of the said firm of J. L. Welshans & Co., dissolved, J. L. Welshans, and the estate of the said J. H. Dwelley, deceased, and obtained an illegal, fraudulent, and unlawful preference unto themselves. \* \* \*

"Wherefore the plaintiff prays that it may have a judgment against the defendants, and each of them, for the sum of $2,514.12, with interest thereon at seven per cent per annum from the time that said boilers and appurtenances were accepted by the government; \* \* \* that the said Crane Company be forthwith required to pay to the clerk of this court the sum of $7,400, and the said Anna Dwelley be required to pay to the clerk of this court the sum of $1,500, with interest thereon, being the exact sum received by her from the said quartermaster hereinbefore mentioned, amounting to $1,650; that the said Patterson, Keniston, and Kent account to this court for each and all of the moneys and property that have been received by them which had formerly belonged to the dissolved firm of J. L. Welshans & Co., and that it be further ordered, adjudged, and decreed that the plaintiff herein, by its contract with the said J. L. Welshans & Co., hereinbefore set forth, and by virtue of said contract, have an assignment of so much of said funds becoming due under said contract of May 29, 1893, as may be sufficient to pay plaintiff's claim in full, and for such other and further relief as may be just and equitable; and also that the defendants J. L. Welshans and J. L. Welshans & Co. be restrained from paying any part or portion of the money in the hands of said quartermaster, to-wit, Major Humphrey, to the said D. C. Patterson, Daniel Keniston, Josiah Kent, or either of them, or to any other person or persons whomsoever, and that said J. L. Welshans and J. L. Welshans & Co. be restrained and enjoined from giving any orders or assignments of any of said moneys in the hands of said quartermaster due or to become due under said contract dated

May 29, 1893, and that the defendants Patterson, Keniston, and Kent be restrained and enjoined from receiving or taking any money from the said quartermaster, and that the said Patterson, Keniston, and Kent be restrained and enjoined from in any way permitting or causing said moneys to be paid out by the said quartermaster to any person or persons whomsoever, except to said J. L. Welshans, to be paid to the clerk of this court under a prior order of the court; and that the said Patterson, Keniston, and Kent be restrained and enjoined from giving any orders upon said fund, or in any other manner appropriating or attempting to appropriate said funds for any purpose; and that the said J. L. Welshans, J. L. Welshans & Co., D. C. Patterson, Daniel Keniston, and Josiah Kent be each restrained and enjoined from in any manner disposing of or appropriating the assets, or any of the assets, of the said dissolved firm of J. L. Welshans & Co. to their individual use and benefit or to the use and benefit of any other person whomsoever except plaintiff herein."

2. An analysis of this petition shows that its averments disclose that Welshans & Co. are indebted to Morse & Co. on open account for the boilers furnished by them to the copartnership and used in the construction of the improvements under their contracts with the United States. In this respect the petition states a legal cause of action against the copartnership and the surviving member thereof.

3. As to the other defendants to the suit, except the manufacturing company, the petition, in effect, charges that the sureties and other defendants, with the connivance of the surviving member thereof, have converted, and will, if not restrained by injunction, convert, to their own use all the assets of the copartnership, leaving the claim of Morse & Co. unpaid. It is not shown by any averment of fact in this petition that what has been done or threatened to be done amounts to a fraud in fact. Except the sureties, it is not shown that these

defendants are not creditors of the copartnership; and the averments of the petition, when fairly construed, disclose that the object and purpose for which this copartnership property was pledged, assigned, and transferred to the sureties were to enable them to carry out and complete the contracts of the copartnership, the performance of which they had guarantied. If the petition states the facts, and all the facts of the transaction as they actually exist, then the facts stated, if proved, would not convict the parties made defendants with having transferred or received the copartnership assets with a fraudulent purpose.

4. The petition is framed upon the theory that all the assignments, pledges, and conveyances made of the copartnership assets by the surviving partner of the copartnership were absolutely void; and the object of the petition is to obtain a decree setting aside as fraudulent and void the assignments, pledges, and conveyances made of the copartnership property by the surviving partner thereof and to marshal the copartnership assets. Assuming, for the purposes of this case, that the disposition made of the assets of the copartnership by the surviving partner thereof was void for want of authority on his part, and that the several assignments, pledges, and conveyances made of the copartnership assets were made and accepted with the fraudulent purpose of hindering, delaying, and defrauding the creditors of said copartnership, we do not see that Morse & Co. are in any position to complain. They are common creditors of this copartnership. It has not been judicially determined that this copartnership is indebted to them and, for aught the court can know, it may finally turn out that the copartnership is not indebted to Morse & Co.; and if Morse & Co. are not creditors of this copartnership, then it is no concern of theirs what disposition has been made of its assets. The facts averred in this petition make it an ordinary creditors' bill, as that term is generally understood, as against all the parties made

defendants to this action except Welshans & Co., and
the question is, does this petition of Morse & Co. state
a cause of action against the parties made defendants to
the action, except Welshans & Co., since it shows upon
its face that the claim of Morse & Co. has never been
reduced to judgment?

"No question rising in suits brought by creditors is bet-
ter settled than that, before a creditor will be permitted
to go into equity to set aside a fraudulent conveyance,
he must first have recovered judgment at law." (See the
rule stated and the authorities collated in 5 Ency. Pl.
& Pr., p. 468.)

"Creditors at large of a partnership have no lien upon
the assets of the firm, and stand in no better position
because their debtor is a partnership, and must, in gen-
eral, recover a judgment before they can resort to equity,
either to marshal the partnership assets and compel their
application to the payment of partnership debts, or to
reach property of the partnership which has been fraudu-
lently conveyed." (See the rule stated and the authori-
ties collated in 5 Ency. Pl. & Pr., p. 482.)

In *Case v. Beauregard*, 99 U. S. 119, the copartnership
and the members thereof were insolvent. One member
of the firm in payment of his individual debt transferred
his interest in the copartnership property to A. A took
possession of the property and sold it to B, the other
member of the copartnership uniting in the conveyance.
C, a creditor without judgment, of the copartnership,
then brought a suit in equity to subject the property
transferred to B to the payment of his debt, and the
court held that as the property was not held in trust by
B, and that as the creditor had no specific lien upon it
and no judgment, the action could not be maintained.
(See also *Case v. Beauregard*, 101 U. S. 688; *Board of
Public Works v. Columbia College*, 84 U. S. 521; *Taylor v.
Bowker*, 111 U. S. 110; *Goembel v. Arnett*, 100 Ill. 34; *Gore
v. Kramer*, 117 Ill. 176, 7 N. E. Rep. 504.)

In *Crippen v. Hudson*, 13 N. Y. 161, it was ruled that

the provisions of the Code of Civil Procedure, which permit a plaintiff to unite in his petition both legal and equitable causes of action, do not modify the rule which requires a creditors' bill to affirmatively disclose that the plaintiff therein, a creditor of an insolvent copartnership, has exhausted his legal remedies for the collection of his debt, the petition not disclosing that the creditor had a legal or an equitable lien upon the copartnership property.

In 3 Pomeroy, Equity Jurisprudence [2d ed.], sec. 1415, the rule under consideration is discussed and the authorities supporting the rule and the exceptions thereto collated. The author says: "It is a necessary result from the whole theory of the creditors' suits that jurisdiction in equity will not be entertained where there is a remedy at law. The general rule is, therefore, that a judgment must be obtained, and certain steps taken towards enforcing or perfecting such judgment, before a party is entitled to institute a suit of this character."

In *Weil v. Lankins*, 3 Neb. 384, Weil brought an action against Lankins to recover a sum of money and at the same time caused an attachment to be issued and levied upon certain real estate as the property of Lankins, the title being of record in the name of his wife. Subsequently, Weil brought an action against Lankins and his wife, reciting the fact that Lankins was indebted to him—Weil; that a suit was pending for the recovery of the debt; the attachment of the real estate as the property of Lankins, and alleging that Lankins had conveyed this real estate to his wife for the purpose of defrauding his creditors and praying that such conveyance might be set aside; and this court held that the petition did not state a cause of action, because it showed upon its face that Weil had not reduced his claim against Lankins to judgment, and summed up its conclusion as follows: "We think it is clear that a creditors' bill to set aside a fraudulent conveyance can only be maintained by a judgment creditor."

In *Weinland v. Cochran*, 9 Neb. 480, Weinland alleged in his petition that in the superior court of Chicago, Cook county, Illinois, he had recovered a judgment against Cochran and one Wiswall; that after the action was commenced, but before the judgment was rendered, Wiswall, without consideration, and for the purpose of defrauding his creditors, conveyed certain real estate in Nemaha county, Nebraska, to one Ford. The prayer of Weinland's petition was for a judgment on the judgment recovered in Illinois, and for a decree setting aside the conveyance of the land made by Wiswall and subjecting it to the payment of whatever judgment he might recover; and the court held, in effect, that there were two causes of action joined in the petition,—one of them a legal cause of action against the parties liable upon the Illinois judgment, the other an equitable cause of action in the nature of a creditors' bill against those parties and their alleged fraudulent grantees; and that the petition, in so far as it attacked the conveyance made of the land as fraudulent, did not state a cause of action. LAKE, J., speaking for the court, said: "Under our practice, subject to certain statutory restrictions, legal and equitable causes of action may be included in the same suit; but they must be existing, and not merely prospective causes of action. And, furthermore, we see no propriety in a practice which would put a grantee to the trouble and expense of a protracted litigation in defense of his title until after the indebtedness of his grantor has been judicially established."

In *Crowell v. Horacek*, 12 Neb. 622, Crowell filed a petition against Waclaw Horacek and others, in which he prayed (1) for a judgment against Horacek for $365; (2) for an injunction to restrain Mary Horacek from receiving a county warrant of Stanton county drawn in her favor for the sum of $88; and (3) to restrain the county clerk of said county from delivering said warrant to said Mary Horacek, and that upon final hearing of the case the said warrant might be declared to be the property

of Waclaw Horacek and applied to the payment of Crowell's claim. The court held that the petition stated a legal cause of action against Waclaw Horacek, but that it failed to state a cause of action against the other parties made defendants thereto. Maxwell, J., examined the question at some length, collated and reviewed the authorities, and summed up the conclusion of the court as follows: "A mere general creditor, who has not reduced his claim to judgment, cannot maintain an action to enjoin a debtor from transferring his property;" and stated the principle upon which the decision rests in the following language: "The reason of the rule seems to be, that until the creditor has established his title he has no right to interfere, and it would lead to an unnecessary, and perhaps a fruitless and oppressive, interruption of the exercise of the debtor's rights. Unless he has a certain claim upon the property of the debtor, he has no concern with his frauds."

In *Johnson v. Parrotte*, 46 Neb. 51, Johnson sued Parrotte at law for damages in the district court of Buffalo county. The jury returned a verdict in favor of Johnson, and Parrotte filed a motion for a new trial, which the district court sustained, but entered no judgment dismissing Johnson's suit. Johnson then prosecuted a petition in error to the supreme court to reverse the order of the district court granting Parrotte a new trial. The supreme court reversed the order of the district court and, in pursuance of a stipulation of the parties, rendered a money judgment in favor of Johnson against Parrotte. This judgment Johnson subsequently made the basis of a creditors' bill brought in the district court of Buffalo county to set aside certain conveyances of real estate made by Parrotte subsequent to the rendition of the verdict, but before the judgment was pronounced by the supreme court, and it was held that the creditors' bill did not state a cause of action, because it showed upon its face that Johnson had no judgment against Parrotte, the judgment pronounced by the supreme court being

void for want of jurisdiction; and in that case it was said by the court that the foundation of every creditors' bill is an unimpeachable judgment, and the plaintiff who exhibits such bill, as a condition precedent to his right to relief, is required to plead and prove his ownership of a valid and unsatisfied judgment.

5. In the states of Maryland, Virginia, West Virginia, Masachusetts, and Alabama, and perhaps others, statutes exist authorizing a creditor to maintain a creditors' bill without first having reduced his claim to judgment; but the authorities are practically unanimous in support of the general rule already stated. It is true that to this general rule there are some exceptions. The doctrine of the supreme court of the United States seems to be that a creditor without judgment may maintain a creditors' bill if he has a lien, legal or equitable, upon the property of his debtor or if the property is held in trust for him. (*Case v. Beauregard*, 101 U. S. 688.)

6. In the case at bar Morse & Co. do not claim that they have any legal lien upon the assets of this copartnership of Welshans & Co., but they do claim that they have an equitable lien upon these assets because of the provisions of the contract under which they sold the boilers. They base this claim of an equitable lien upon these assets upon the provisions of the contract in and by which Welshans & Co. agreed that Morse & Co. should be paid for the boilers as soon as they were set in place and accepted by the United States, and paid for out of the moneys coming to Welshans & Co. from the United States on the contract for the improvement in which said boilers were used. The petition does allege that the agreement between Morse & Co. and Welshans & Co. not only provided that Welshans & Co. should be paid for their boilers out of the money coming on the contract with the United States, but that they should have a lien upon the proceeds of that contract. But it is obvious that this is the pleader's legal conclusion of the effect of and not the actual contract between the par-

ties. But an agreement of a debtor to pay his creditor's claim out of the moneys received from a particular fund, but which gives the creditor no present right in or control over the fund, save through the debtor, and looks to the future acts of the debtor to render the fund available, does not operate as an equitable assignment of the fund to the creditor. (*Christmas v. Griswold*, 8 O. St. 558; *Ford v. Garner*, 15 Ind. 298; *Pearce v. Roberts*, 27 Mo. 179; *German Nat. Bank of Hastings v. First Nat. Bank of Hastings*, 55 Neb. 86.)

In *Christmas v. Russell*, 81 U. S. 69, the rule is stated in this language: "A mere promise, though of the clearest and most solemn kind, to pay a debt out of a particular fund, is not an assignment of the fund even in equity. To make an equitable assignment there should be such an actual or constructive appropriation of the subject-matter as to confer a complete and present right on the party meant to be provided for, even where the circumstances do not admit of its immediate exercise. If the holder of the fund retain control over it, as, *ex. gr.*, power on his own account to collect it or to revoke the disposition promised, this is fatal to the thing as an equitable assignment." The averments of Morse & Co.'s petition fall far short of bringing them within the doctrine of an equitable assignment. No part of the moneys due from the United States was set aside for the payment of Morse & Co.'s claim. Notwithstanding the promise made by Welshans & Co. to pay Morse & Co.'s claim out of the moneys which might be paid them by the United States as soon as the boilers were accepted and put in place, Welshans & Co. at no time parted with their control and right of disposition of the money coming from the United States; nor did they, by an order or otherwise, invest Morse & Co. with the authority to receive or collect these moneys or any part of them.

7. A second theory upon which this petition is framed is that the assets of this partnership were held in trust

29

for all the creditors by the surviving partner and that therefore his transferees hold them in trust. But the creditors of a copartnership, merely because they are creditors, are not given a lien by law upon its assets whether the firm be solvent or insolvent; and the assets of an insolvent copartnership are not held in trust by the surviving partner of the firm for the payment of copartnership debts. (*Richards v. Leveille*, 44 Neb. 38; *Ætna Ins. Co. v. Bank of Wilcox*, 48 Neb. 544.) On the dissolution of this copartnership by the death of Dwelley, the right to the possession and disposition of the copartnership assets vested in the surviving partner. (*Lindner v. Adams County Bank*, 49 Neb. 735.) And he no more held those partnership assets in trust for the benefit of the creditors of the partnership than did the partnership itself. It is to be remembered that this is not an action to wind up the copartnership affairs of Welshans & Co. and to marshal and distribute their assets. If, therefore, the petition of Morse & Co. shows that the copartnership of Welshans & Co. and the members thereof are insolvent; that the entire assets of said copartnership have been, with the consent and connivance of the surviving member, transferred and accepted for the purpose of defrauding the copartnership creditors, still the petition states no cause of action against the parties to such transfer, because it shows upon its face that Morse & Co. have not reduced their claim against the copartnership to judgment, the petition disclosing that they have neither a legal nor an equitable lien upon the copartnership assets and that they are not trust funds for the payment of partnership debts. If the petition showed that this copartnership, or the surviving member of it, was not within the jurisdiction of the court and therefore it was impossible for Morse & Co. to obtain a judgment against it or the surviving member of it, and further disclosed that such parties had no property within the jurisdiction of the court which Morse & Co. could reach by attachment, garnishment, or other legal process,

then, perhaps, the petition would state a cause of action, because, though it would show that Morse & Co. had no judgment, it would show it impossible to obtain one, and that they were without any remedy at law whatsoever for the collection of their claim. But to enable Morse & Co. to maintain this creditors' bill the petition must aver that their claim against Welshans & Co. has been reduced to judgment and is unsatisfied, or it must show that the obtaining of a judgment is impossible because the parties liable upon the claim are not within the jurisdiction of the court, and that the copartnership has no property which can be reached by garnishment, attachment, or other legal process. What has been said in reference to the petition of Morse & Co. applies to the cross-petition of the manufacturing company.

On the final hearing of this case the district court made an order dismissing Mrs. Dwelley, the deceased partner's widow, out of the case. This order of the district court is affirmed. The court also made an order, on the final hearing, dissolving a temporary injunction which it had issued at or after the commencement of the action. This order is affirmed. Every other order made by the district court in this proceeding is reversed, vacated, and annulled and the cause is remanded to the district court, not for a new trial, but with instructions, (1) by proper orders, to cause the clerk of the court to repay to the parties who paid it in all money in his custody paid to him by parties to this suit in pursuance of the orders of the district court made herein; (2) to dismiss the cross-petition of the manufacturing company; (3) to dismiss the action of Morse & Co. against all parties made defendants thereto, except the copartnership of Welshans & Co. and J. L. Welshans, the surviving member thereof, the parties so dismissed out of the case to recover their costs; (4) to permit the action of Morse & Co. to stand and proceed as one at law, if desired, to judgment against Welshans & Co. and J. L. Welshans on the claim which Morse & Co. assert against the copartnership; (5) to tax

all the costs of this proceeding to Morse & Co. and the Nelson Manufacturing Company.

REVERSED AND REMANDED.